EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PEGGY FARGANIS,

                Plaintiff,

    -against-

TOWN OF MONTGOMERY, DENNIS
BARNETT, MICHAEL TABACK,
KENNETH BYRNES, DANIEL THORSON,      **MEMORANDUM DECISION**
sued in their individual capacities,                   **AND ORDER**

                Defendants.                  06 Civ. 5238 (GAY)
------------------------------------------------------------X
PEGGY FARGANIS,

                Plaintiff,

    -against-

DENNIS BARNETT, KENNETH BYRNES,
DANIEL THORSON, sued in their
individual capacities,

                Defendants.
------------------------------------------------------------X

      Plaintiff Peggy Farganis has Multiple Sclerosis, as a result of which her speech is slurred, she has weakness in her lower extremities, her balance is compromised, she walks with a limp and her foot drags when she walks. On March 18, 2005, plaintiff was arrested and charged with Endangering the Welfare of a Child. On or about July 11, 2006, plaintiff commenced the instant action alleging disability discrimination against the Town of Montgomery and several of its police officers. On November 15, 2007, following a bench trial, plaintiff was acquitted of all charges. On or about December 21,

2007, plaintiff commenced a second action alleging false arrest, malicious prosecution and violation of due process against three of the individual police officers named in the original action. Both actions were thereafter consolidated. Presently before this Court are defendant Barnett's, Byrnes' and Thorson's motions (1) to dismiss plaintiff's due process claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and (2) for summary judgment on plaintiff's false arrest and malicious prosecution claims pursuant to FRCP Rule 56. For the reasons that follow, defendants' motions are granted.[1]

I. FACTS

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

On March 18, 2005, plaintiff was operating a van in Montgomery, New York. Plaintiff placed her six year old son, B.F., in a standard lap and shoulder seatbelt in the second row of bucket seats behind the driver. No child safety bolster seat was present in the van. Plaintiff was aware that it was a violation of New York State law to transport a six year old in a motor vehicle without a proper child safety seat.

B.F. got out of the improperly positioned standard lap and shoulder seatbelt and moved into the front passenger seat. As plaintiff was driving away from a stop sign, she

---

[1] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).

2

noticed B.F. out of his seatbelt and moving into the front seat. Plaintiff alleges that she tried to block B.F.'s maneuver, but he went underneath her arm to get into the front passenger seat. Plaintiff did not stop the van and continued to travel slowly through the intersection. B.F. opened the passenger side door and fell out of the van onto the street.

The incident was witnessed by Velvet Conboy. Ms. Conboy observed plaintiff's van swerving on the road for several minutes and then suddenly stop when a child fell from the van. Ms. Conboy stopped and asked plaintiff if she needed help. Plaintiff stated that everything was fine. Plaintiff picked B.F. up from the roadway, placed him in back in the same seat and restraint from which he had just released himself, and drove off. Ms. Conboy believed that plaintiff was intoxicated and called the police to report her observations. Plaintiff agrees that it was reasonable for Ms. Conboy to believe plaintiff was intoxicated. Plaintiff drove approximately five miles to Mike's Deli, where she had arranged to meet her niece whom plaintiff had called to request assistance in getting medical attention for B.F. Velvet Conboy stayed on the phone with the police, and followed plaintiff to Mike's Deli.

When plaintiff pulled into the deli's parking lot, she was surrounded by police cars. The police told plaintiff they had received a 911 call that she was drinking and driving, and a child had fallen out of her car. The police also spoke with Velvet Conboy, who told them what she had witnessed.

Sergeant Barnett interviewed plaintiff and noticed that her speech was slurred and she had difficulty standing. Plaintiff told him she had Multiple Sclerosis. The police administered a partial field sobriety test, which plaintiff failed. Plaintiff was arrested and

3

charged with Endangering the Welfare of a Child.

Pursuant to New York State Social Service Law § 413(1), plaintiff's possible maltreatment or abuse of B.F. was reported, in confidence, to the Ulster County Department of Social Services ('DSS"). By letter dated April 27, 2005, the DSS informed plaintiff that "credible evidence has been found to support the determination that [plaintiff] maltreated or abused the child" who fell from her car, and that the "State Central Registry report dated 3/18/05 is being indicated against you for Inadequate Guardianship."

## II. RULE 12(b)(6) STANDARD OF REVIEW

Pursuant to FRCP Rule 12(b)(6), a complaint may be dismissed if plaintiff has "fail[ed] to state a claim upon which relief may be granted." In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

### A. DUE PROCESS

In order to prevail on her procedural due process claim, plaintiff must prove "(1)

that [she] possessed a constitutionally protected interest, (2) that such interest was deprived as a result of government action, (3) and that the deprivation occurred without constitutionally adequate pre- or post-deprivation process." See Maloney v. County of Nassau, No. 03-CV-4178, 2007 WL 2815811, at *18 (E.D.N.Y. Sept. 25, 2007) (quotation and citations omitted). Plaintiff alleges that defendants violated her due process rights because the "DSS ultimately 'indicated' her for child neglect, thereby stigmatizing her as a parent and limiting her future employment options." See Complaint, ¶ 19. Plaintiff, therefore, alleges a stigma-plus liberty interest claim. See Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989). In order to state a stigma-plus liberty interest claim, plaintiff must allege "(1) the utterance of a defamatory, stigmatizing statement, and (2) some tangible and material state-imposed burden." See Maloney, 2007 WL 2815811, at *18 (quotation and citation omitted). Defendants contend that plaintiff's stigma-plus claim must be dismissed because plaintiff does not assert a cognizable liberty interest.

Plaintiff argues that her case is analogous to *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994), in which the Second Circuit addressed the question of whether plaintiff's liberty interests were violated when defendants placed her name on the Central Registry of suspected child abusers. In *Valmonte*, the Second Circuit applied the stigma-plus test and found that a protected liberty interest was implicated because the defamation occurred in conjunction with plaintiff's attempt to obtain employment within the child care field, coupled with the fact that plaintiff's potential employers were statutorily obligated to check the Registry and to maintain a written record of the justification for hiring plaintiff. Here, plaintiff argues that she, like *Valmonte*, has a

5

protected liberty interest because the DSS notified her that her name would be included in the Central Registry and potential employers will discover this adverse determination in reviewing plaintiff's job application.

In order to satisfy the defamation prong of the stigma-plus test, plaintiff must allege that the stigmatizing information was publicized. See Valmonte, 18 F.3d at 999. In Valmonte, the Second Circuit noted that New York State Social Service Law § 424-a requires "[n]umerous state agencies, private businesses, and licensing agencies related to child care, adoption, and foster care are required by law to inquire whether potential employees or applicants are on the Central Register." See id. at 995. The plaintiff in Valmonte satisfied the defamation prong because, "although Valmonte's presence on the Central Register will not be disclosed to the public, it will be disclosed to any employer statutorily required to consult the Central Register. Since Valmonte states that she will be applying for child care positions, her status will automatically be disclosed to her potential employers" See id. at 1000.

There is one crucial difference between Valmonte and the instant case, however, which is fatal to plaintiff's claim: plaintiff does not allege that she is, or will be, seeking employment in the child care field. Plaintiff, therefore, fails to allege that her inclusion on the Central Registry will result in "stigma" or damage to her reputation. Accordingly, plaintiff's procedural due process claim must be dismissed.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

6

a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

### A. FALSE ARREST

A claim for false arrest under § 1983 is substantially the same as a claim for false arrest under New York law. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). It is well-settled that "[t]he existence of probable cause to arrest . . . is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Id. (internal quotation and citation omitted). Probable cause exists where police officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

7

that the person to be arrested has committed or is committing a crime." Id.

Defendants move for summary judgment on plaintiff's false arrest claim on the ground that they are entitled to qualified immunity because there was arguable probable cause to arrest her. Even absent probable cause to arrest, a police officer is entitled to qualified immunity if he can demonstrate that there was arguable probable cause for the arrest. See Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (quotation and citation omitted). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007). As with the issue of probable cause, the relevant inquiry centers on the officer's knowledge at the time of the arrest. See Escalera, 361 F.3d at 747-48. Ultimately, if an officer "reasonably but mistakenly concluded that probable cause existed, the officer is entitled to qualified immunity." See Lee v. McCue, No. 04-Civ-6077, 2007 WL 2230100, at *2 (S.D.N.Y. July 25, 2007).

Pursuant to New York Penal Law § 260.10(1), "a person is guilty of endangering the welfare of a child when he knowingly acts in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old . . . ." Here, the undisputed facts establish the following: Eyewitness Conboy informed police that she observed plaintiff's van swerving on the road for several minutes and then suddenly

8

stop when a child fell from the van. Ms. Conboy also told police she believed plaintiff was intoxicated. Plaintiff admitted that her child was ejected from the van. Plaintiff also admits it was reasonable for Ms. Conboy to believe she was intoxicated. Defendants observed that plaintiff's speech was slurred and she had difficulty standing. Defendants administered a partial field sobriety test, which plaintiff failed. In sum, based upon the undisputed evidence here, police officers of reasonable competence could certainly disagree as to whether there was probable cause to arrest plaintiff for Endangering the Welfare of a Child. Accordingly, defendants are entitled to qualified immunity on plaintiff's false arrest claim.

### B. MALICIOUS PROSECUTION

In order to establish a § 1983 claim for malicious prosecution, plaintiff must demonstrate (1) that defendants initiated a prosecution against her, (2) that defendants lacked probable cause to believe the proceeding could succeed, (3) that defendants acted with malice, (4) that the prosecution terminated in her favor and (5) that there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. See Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). Defendants argue that they are also entitled to summary judgment on plaintiff's malicious prosecution claim because there was arguable probable cause to charge plaintiff with Endangering the Welfare of a Child.

Here, resolving all ambiguities and drawing all inferences in favor of plaintiff, there are no genuine issues of material fact which would preclude a finding that defendants are entitled to qualified immunity on plaintiff's malicious prosecution claim. Police officers accused of malicious prosecution are entitled to qualified immunity if

9

defendants are entitled to qualified immunity on plaintiff's malicious prosecution claim. Police officers accused of malicious prosecution are entitled to qualified immunity if other officers of reasonable competence could disagree on the existence of probable cause, "and nothing occurred between the arrest and the prosecution to alter this" belief. See Rogers v. Amsterdam, 303 F.3d 155, 159 (2d Cir. 2002). As stated above, based upon the evidence here, police officers of reasonable competence could, at the very least, disagree as to whether there was probable cause to arrest plaintiff under New York Penal Law § 260.10(1). There is no evidence of any occurrence between the time plaintiff was arrested and the time she was charged which would alter this belief. Accordingly, defendants are also entitled to qualified immunity as to plaintiff's malicious prosecution claim.

### IV. CONCLUSION

For the reasons stated above, (1) defendants' motion to dismiss is **GRANTED** and plaintiff's procedural due process claim is dismissed and (2) defendants' motion for summary judgment on the ground of qualified immunity is **GRANTED** and plaintiff's false arrest and malicious prosecution claims are dismissed.

**A telephone conference will be held on September 18, 2008 at 10:00 a.m. Plaintiff shall initiate the call.**

Dated: August 20, 2008
White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.

10